UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CRYSTAL CRUZ,**

    **Plaintiff,**

v.                                                             Case No:  6:24-cv-1008-RBD-NWH

**CREDITMAX EXPERTS, LLC,**

    **Defendant.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff Crystal Cruz's ("Plaintiff") Motion for Default Judgment Against Defendant Creditmax Experts, LLC ("Defendant") on a Sum Certain (the "Motion"), filed October 10, 2024. (Doc. 14). For the reasons set forth below, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## BACKGROUND[1]

This case arises under the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679b and 1679g. (*See* Doc. 1). In early 2023, Plaintiff contacted Defendant regarding its credit repair services. (*Id.*, ¶¶ 7-8). Defendant informed Plaintiff that it "would be able to get certain information removed from Plaintiff's credit report" by disputing that information in exchange for payment. (*Id.*, ¶¶ 9-10). Plaintiff specifically

---

[1] On default, a defendant admits the well-pleaded allegations of fact in the complaint. *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009).

asked Defendant to remove "a mortgage-related debt," and Defendant promised to have that debt "removed from all of Plaintiff's credit reports through its services." (*Id.*, ¶ 11). Defendant represented that Plaintiff "would be entitled to a full refund on her payments" if she "did not have the account removed entirely from her credit reports within 3 months of signing up." (*Id.*, ¶ 12).

Based on that conversation, Plaintiff entered into a contract with Defendant, which required her to pay "approximately $7,500.00 for Defendant's services 'at signup.' " (*Id.*, ¶¶ 13-14). Plaintiff ultimately paid the $7,500.00 sign-up fee in two payments. (*Id.*, ¶ 15).[2]

After three months, Plaintiff requested the refund that Defendant promised because the mortgage-related debt remained on her credit reports. (*Id.*, ¶¶ 19-20). Despite her attempts to contact Defendant and Defendant's various requests for extensions of time, Plaintiff has not received a refund. (*Id.*, ¶¶ 20-23).

Plaintiff filed this lawsuit on May 31, 2024, asserting that Defendant violated § 1679b of the CROA. (*Id.*). Although Defendant was served, Defendant has neither filed an answer nor otherwise appeared. (*See* Docs. 11-13). Consequently, Plaintiff filed the instant Motion, seeking $7,500.00 in damages under 15 U.S.C. § 1679g(a)(1)(B) and $2,362.50 in attorneys' fees and costs pursuant to § 1679g(a)(3).[3]

---

[2] Plaintiff was also subjected to an undisclosed monthly fee "totaling approximately $20 just to have access to her account with Defendant." (Doc. 1, ¶ 17).

[3] While Plaintiff's Complaint includes a request for punitive damages under § 1679g(a)(2)(A), Plaintiff does not seek punitive damages in the instant Motion. (*Compare* Doc. 1 *with* Doc. 14).

2

## LEGAL STANDARD

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear. Fed. R. Civ. P. 55(b)(2). The mere entry of a default by the Clerk does not warrant entering a default judgment without more. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Rather, a defaulted defendant is deemed to admit only the plaintiff's well-pleaded allegations of fact. *Id.* "Thus, before entering a default *judgment* for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.*

"Once liability is established, the court turns to the issue of relief." *Enpat, Inc. v. Budnic,* 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011). Under Federal Rule of Civil Procedure 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). However, a "court may conduct hearings when it needs to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter." *Enpat, Inc.*, 773 F. Supp. 2d at 1313 (citing Fed. R. Civ. P. 55(b)(2)). That said, an evidentiary hearing is not required "where all essential evidence is already of record." *SEC v. Smyth,* 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

## DISCUSSION

### I. Service of Process

The Court previously determined that Defendant was properly served on June 26, 2024, through service on an employee of its registered agent, pursuant to Federal Rule of Civil Procedure 4(h)(1)(B). (Docs. 10, 12).

### II. Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because a federal question is presented on the face of Plaintiff's properly pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); (Doc. 1). The Court has personal jurisdiction over Defendant because Defendant operates and conducts business in Orlando, Florida, which is the location of its principal place of business. *See* Fla. Stat. § 48.193(1)(a)(1) ("A person . . . submits himself or herself . . . to the jurisdiction of the courts of this state for any causation of action arising from . . . [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state."); (Doc. 1, ¶ 5; Doc. 12). This Court is the appropriate venue because a substantial portion of the events giving rise to Plaintiff's claim occurred in the Middle District of Florida. *See* 28 U.S.C. § 1391(b)(2); (Doc. 1, ¶ 3).

### III. Liability

Plaintiff moves for default judgment on her CROA claim.[4] "The CROA

---

[4] Although Plaintiff separates Defendant's "[v]iolations of the Credit Repair Organizations Act" into three counts in her Complaint, the undersigned refers to a singular "claim" under the CROA. (*See* Doc. 1).

4

prohibits unfair or deceptive advertising and business practices by credit repair organizations." *FTC v. Lalonde*, 545 F. App'x 825, 837 (11th Cir. 2013) (citing 15 U.S.C. § 1679(b)(2)). That Act defines a "credit repair organization" as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of . . . improving any consumer's credit record, credit history, or credit rating[.]

§ 1679a(3)(A)(i).

The CROA prohibits credit repair organizations from: (1) making or using "any untrue or misleading representation of the services of the credit repair organization"; (2) engaging "in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization"; and (3) charging or receiving "any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed." §§ 1679b(a)(3)–(4), (b).

Plaintiff (a resident of Brooklyn, New York) has sufficiently pleaded that Defendant is a credit repair organization because she alleges Defendant (a Florida LLC) contracted with her for the purported purpose of improving her credit score in exchange for $7,500.00. (Doc. 1, ¶¶ 4-5, 7-15). *See Dauval v. Preferred Collection & Mgmt. Servs., Inc.*, No. 8:11-cv-2269-T-27TGW, 2012 WL 5928622, at *4 (M.D. Fla. Nov. 26, 2012). Additionally, Plaintiff has properly alleged that Defendant violated

5

§§ 1679(b)(a)(3)–(4) and (b), considering that Defendant promised to remove Plaintiff's mortgage-related debt from all of her credit reports, charged Plaintiff for that service before Defendant performed any work, and offered her a money-back guarantee—but ultimately failed to fulfill any of its promises.[5] (Doc. 1, ¶¶ 9-22, 30, 35, 40). Taking these facts as true, the undersigned respectfully recommends that the Court find Plaintiff has pleaded a plausible claim for relief under the CROA, §§ 1679(b)(a)(3)–(4) and (b).

## IV.  Damages

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations related to damages are not deemed admitted and the Court must determine the amount and character of damages to be awarded." *Glanzrock v. Patriot Roofing Indus., Inc.*, No. 8:07-cv-535-T-33MAP, 2009 WL 179634, at *2 (M.D. Fla. Jan. 26, 2009) (citing *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)). "Damages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts." *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1543–44 (11th Cir. 1985)

Pursuant to § 1679(g), Plaintiff may recover actual damages and attorneys' fees for Defendant's violations of the CROA. That provision states, in relevant part:

---

[5] In other words, Plaintiff has pleaded a claim under the CROA because she has alleged that Defendant issued untrue and misleading representations regarding its services, engaged in a course of business that resulted in deception in connection with the sale of its services, and charged Plaintiff for its services before it actually performed said services. *See* §§ 1679(b)(a)(3)–(4) and (b).

6

> Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:
>
> **(1) Actual damages**
>
> The greater of—
>
> **(A)** the amount of any actual damage sustained by such person as a result of such failure; or
>
> **(B)** any amount paid by the person to the credit repair organization. . . .
>
> **(3) Attorneys' fees**
>
> In the case of any successful action to enforce any liability under paragraph (1) or (2), the costs of the action, together with reasonable attorneys' fees.

*Id.* §§ 1679g(a)(1), (3).

In her Motion, Plaintiff seeks $7,500.00 in actual damages under § 1679g(a)(1)(B) and $2,362.50 in attorneys' fees and costs pursuant to § 1679g(a)(3). (Doc. 14; *see* Docs. 14-1, 14-2).

### A. Actual Damages

The undersigned concludes that Plaintiff is entitled to $7,500.00 in actual damages under § 1679g(a)(1)(B), as that is the amount that she alleges she paid to Defendant. (Doc. 1, ¶¶ 14-15).

7

## B. Attorneys' Fees

Plaintiff is also entitled to attorneys' fees under § 1679g(a)(3).[6] In her Itemization of Attorneys' Fees and Costs, Plaintiff requests a total of $1,862.50 in attorneys' fees, on the basis that counsel spent a total of 8.5 hours of time on this case, split between work by attorney Alexander J. Taylor (3.2 hours at $375.00 per hour) and a paralegal (5.3 hours at a rate of $125.00 per hour). (Doc. 14-1). Attorney Taylor asserts that this billing is "reasonable for an attorney with similar experience." (Doc. 14-2).

Based on counsel's averment and the undersigned's own experience, the undersigned will recommend that the Court (1) approve counsel's request for rates of $375.00 per hour for Attorney Taylor and $125.00 per hour for his paralegal as reasonable and (2) find the number of hours spent on this case (8.5, primarily billed by counsel's paralegal) reasonable. *See Bean v. Step 1 Credit, LLC*, No. 1:23-CV-01504-DII, 2024 WL 3510303, at *4 (W.D. Tex. July 22, 2024), *report and recommendation adopted*, 2024 WL 3730277 (W.D. Tex. Aug. 7, 2024) (finding the same requested rates and 8.1 hours of work reasonable in a case involving a CROA claim).

---

[6] Middle District of Florida Local Rule 7.01 provides for a bifurcated process to determine attorneys' fees and expenses. However, in the interest of judicial efficiency, and given the fact that Defendant is in default, the undersigned addresses the merits of Plaintiff's requested fees and costs, and respectfully recommends that the Court forego the procedural mechanisms set forth in Local Rule 7.01 and rule on the issues of both entitlement and quantification without additional motion practice. *See* Local Rule 1.01(b).

8

### C. Costs

Additionally, Plaintiff is entitled to costs pursuant to § 1679g(a)(3). She seeks a total of $500.00 in costs: $405.00 for the filing fee and $95.00 for service fees. (Doc. 14-1 at 2). Plaintiff is entitled to recover the filing fee, which the docket reflects that she paid. *See* 28 U.S.C. § 1920(1); *see also Fam. Oriented Cmty. United Strong, Inc. v. Lockheed Martin Corp.*, No. 8:11-cv-217-T-30AEP, 2012 WL 6575348, at *1 (M.D. Fla. Dec. 17, 2012) ("Fees of the clerk and marshal include filing fees and are clearly taxable.").

Although the recovery of private process server fees is authorized under 28 U.S.C. § 1920(1), the rate must not exceed the costs charged by the United States Marshal's Service to effectuate service. *See EEOC v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The current statutory rate for service by the United States Marshal is $65.00 per hour, plus travel costs and other out of pocket expenses. *See* 28 C.F.R. § 0.114(a)(3); *Cadle v. GEICO Gen. Ins.*, No. 6:13-cv-1591-Orl-31GJK, 2015 WL 4352048, at *2 (M.D. Fla. July 14, 2015).

Plaintiff provides no invoice, documentation, or other information in support of the $95.00 she requests. As a result (and absent any argument or evidence in support of a higher amount), the undersigned will recommend that the recoverable costs for service of process be limited to $65.00. *See Joe Hand Promotions, Inc. v. Johnny G's LLC*, No. 8:19-cv-652-T-60CPT, 2020 WL 7029302, at *6 (M.D. Fla. Nov. 13, 2020), *report and recommendation adopted*, 2020 WL 7024873 (M.D. Fla. Nov. 30, 2020).

### D. Post-Judgment Interest

Finally, Plaintiff seeks an award of post-judgment interest on her damages. (*See* Doc. 14 at 4). By federal statute, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Interest shall be computed daily to the date of payment . . . and shall be compounded annually." *Id.* § 1961(b). Interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.* § 1961(a). Under this statute, post-judgment interest is mandatory. *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1053 (11th Cir. 1994). Therefore, the undersigned recommends that the Court award Plaintiff post-judgment interest, which will accrue at the statutory rate as set forth in 28 U.S.C. § 1961.

### CONCLUSION

Accordingly, the undersigned **RESPECTFULLY RECOMMENDS** that the Court **GRANT in part** and **DENY in part** Plaintiff's Motion for Default Judgment Against Creditmax Experts, LLC on a Sum Certain (Doc. 14), as follows:

1. **ENTER** a final default judgment in favor of Plaintiff and against Defendant in the total amount of $9,832.50, allocated to:

    - $7,500.00 in actual damages;
    - $1,862.50 in attorneys' fees; and

- $470.00 in costs;

2. **AWARD** Plaintiff post-judgment interest, which will accrue at the statutory rate as set forth in 28 U.S.C. § 1961;

3. **DENY** the Motion (Doc. 14) in all other respects; and

4. **DIRECT** the Clerk of Court to issue a judgment consistent with the Court's ruling on this Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

The party has **fourteen days** from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on July 29, 2025.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE